**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| UBER TECHNOLOGIES, INC., RASIER-NY LLC, and LIBERTY MUTUAL FIRE INSURANCE COMPANY, <br><br><br> Plaintiffs, <br><br> v. <br><br> GEORGETTE POWELL, OMAR ZAVIER ALLEN, KEVAR TAYLOR, SHAMARIE LIVINGSTON, ANELKA RICARDO GREEN, KONATO RASHIDI CAMPBELL, DIYONTA BALFOUR, VIVIAN MARSHALL, RENATO CAMPBELL, KEENO H. MORRISON, SHANTIA WITTINGHAM, DWAYNE HYDE, SHEDAH JAMES, ODEAN SAMUELS, ACCUCARE SOLUTIONS INC., ADVANCED ORTHO DME CORP., LIBERTY MD, LLC, MEDICAL SUPPLY OF NY DIRECT SERVICES CORP., ORTHO MED SPA, INC., ROCKAWAY BLVD PHARMACY, SIMEON ISAACS, M.D., and SUPER ASSOCIATES P.C., <br><br><br> Defendants. | Case No. <br><br><br><br> **COMPLAINT** <br><br><br> **JURY TRIAL DEMANDED** |

**Table of Contents**

SUMMARY OF THE ACTION .................................................................................................. 1

THE PARTIES ......................................................................................................................... 4

JURISDICTION AND VENUE ................................................................................................ 7

FACTUAL BACKGROUND .................................................................................................... 7

I.     Using the Uber Platform to Commit Insurance Fraud ...................................................... 7

       A.     Background on the Scheme .................................................................................. 7

       B.     Examples Of the Scheme In Operation Against Uber and Liberty Mutual ........ 8

              1.     August 13, 2023 Staged Collision ......................................................... 10

              2.     August 20, 2023 Staged Collision ......................................................... 12

              3.     August 23, 2023 Staged Collision ......................................................... 13

              4.     October 10, 2023 Staged Collision ........................................................ 14

              5.     October 26, 2023 Staged Collision ........................................................ 16

              6.     July 29, 2024 Staged Collision .............................................................. 18

              7.     September 22, 2024 Staged Collision ..................................................... 19

              8.     March 1, 2025 Staged Collision ............................................................. 21

II.    Insurance Fraud Allegations ......................................................................................... 22

       A.     The Individual Defendants' Misconduct and Respective Bases for
              Liability .............................................................................................................. 22

       B.     Plaintiffs are Victims of the Scheme and Have Suffered Injury ........................ 23

III.   Declaratory Judgment Allegations ................................................................................ 25

       A.     Basis for Declaratory Judgment ......................................................................... 25

       B.     Insurance Policy Provisions ............................................................................... 27

       C.     Application of Staged and/or Intentional Loss case Law .................................. 33

       D.     The Requirement to Appear for an Examination Under Oath ........................... 34

-ii-

E.  Coverage Liability for Failure to Appear at an EUO ........................................ 38

CAUSES OF ACTION ........................................................................................................ 40

PRAYER FOR RELIEF ...................................................................................................... 43

DEMAND FOR JURY TRIAL .......................................................................................... 44

Plaintiffs Uber Technologies, Inc. ("Uber"), Rasier-NY, LLC ("Rasier"), and Liberty Mutual Fire Insurance Company ("Liberty Mutual"), by their undersigned attorneys, hereby allege as follows:

## SUMMARY OF THE ACTION

1.      Every day, hundreds of thousands of New Yorkers rely on Uber's rideshare platform for their transportation needs.  Thousands more New Yorkers earn a living by using the Uber application to provide a service to passengers.  Passengers and drivers alike benefit from reasonable prices and low costs of the service.  However, its accessibility and popularity have made Uber and insurance companies such as Liberty Mutual a target of a scheme to misuse the application to stage fake automobile accidents, trigger insurance coverage, and begin a sequence of events leading to sham personal injury claims and lawsuits.  As Governor Hochul noted on January 22, 2026, "sophisticated actors stage elaborate accidents, designed to allow for 'jackpot' payouts from insurance companies or jury awards, and these scams are becoming increasingly prevalent."  Staged accidents and related forms of healthcare fraud are a "pervasive drain on the national health care system," according to a March 15, 2026 report of the New York State Department of Financial Services.

2.      Plaintiffs bring this lawsuit to thwart an ongoing and expanding criminal conspiracy of closely connected individuals who have repeatedly and systematically targeted the Plaintiffs through use of Uber's popular ride share platform in order to stage elaborate fake accidents that threaten public safety and submit fraudulent insurance claims to Liberty Mutual.  As described in detail below, the means and methods of the conspiracy include the use of a common bank account to pay for rides hailed through the Uber application; use of a shared iPhone 14 to access the Uber application before the staged accidents; and the use of a common address (720 East 91st Street, Apartment 4, Brooklyn, New York).

3.      Georgette Powell, Omar Zavier Allen, Kevar Taylor, Shamarie Livingston, Anelka Ricardo Green, Konato Rashidi Campbell, Diyonta Balfour, Vivian Marshall, Renato Campbell, Keeno H. Morrison, Shantia Wittingham, Dwayne Hyde, Shedah James, and Odean Samuels (the "Individual Defendants") are each members of a conspiracy referred to herein as the "Fraud Ring." The Fraud Ring has carried out at least eight  separate staged automobile collisions against the Plaintiffs.

4.      The fraudulent scheme follows a repeating pattern whereby two or more members of the Fraud Ring will log in to the Uber application and request a pick-up at a pre-determined location typically in the late-night hours.

5.      The pick-up locations are residential side streets (usually one-way roads) in Nassau County, N.Y., which allow the Fraud Ring to lure the unsuspecting Transportation Network Company ("TNC") drivers using the Uber app toward a location where a hit-and-run collision will occur. The pre-determined locations for the staged collisions are often intersections with stop signs.

6.      Upon information and belief, the Fraud Ring chooses these locations due to the low probability that they are monitored by video cameras. The staged accidents occur late at night, which further reduces the likelihood of any independent witnesses observing the incidents.

7.      Each of these staged accidents are nearly identical. The collisions are in fact deliberate.

8.      Shortly after picking up certain Defendants, the TNC driver utilizing the Uber app will encounter a vehicle driven by a co-conspirator which intentionally strikes the side of the TNC vehicle with only a minimal severity of impact.

2

9.     The incidents are "hit-and-runs" as the co-conspirator vehicle flees the scene immediately after causing the side-swipe collision.

10.     Though the impacts of these staged collisions are generally minor, the Individual Defendants allege multiple serious bodily injuries, while the TNC drivers, who are not part of the scheme, are almost always uninjured.

11.     Following the staged losses, the Individual Defendants submit fraudulent claims of fabricated and blatantly misrepresented personal injuries to Uber.

12.     The Individual Defendants likewise overtreat for the fictitious injuries with certain facilities, including Accucare Solutions Inc., Advanced Ortho DME Corp., Liberty Md, Medical Supply of NY Direct Services Corp., Ortho Med Spa, Inc., Rockaway Blvd Pharmacy, Simeon Isaacs, M.D., and Super Associates P.C. ("the Medical Provider Defendants"), who then, in turn, submit insurance claims for New York No-Fault benefits to Co-Plaintiff Liberty Mutual.

13.     The insurance fraud scheme perpetrated by the Individual Defendants was designed to, and did in fact, result in numerous payments from Co-Plaintiffs Liberty Mutual and Uber to and on behalf of the Defendants pursuant to New York's No-Fault Act thereby causing a direct financial harm to the Plaintiffs.

14.     Though the illicit activities described herein committed by the Fraud Ring have caused significant damages to each of the Plaintiffs, the effects ripple through society causing a much larger harm on the population at large.

15.     As explained in a recent opinion by the New York Supreme Court, "[i]nsurance fraud is not a victimless crime. Because premium increases partly incorporate fraud costs, insurance fraud hurts all policyholders, not just insurers (Robert W. Emerson, Insurance Claims Fraud Problems and Remedies, 46 U Miami L Rev 907, 913 [1992]). According to the Coalition Against

3

Fraud, the U.S. loses approximately $308.6 billion in insurance fraud." *Integon National Insurance Company v. Alfredo Salazar-Ocohoa, et al.*, Index No. 601531/2024, NYSCEF Doc. No. 771.

16.     Based on the foregoing, this action seeks a Declaratory Judgment as to the rights and obligations of the parties pursuant to 28 U.S.C. § 2201, et seq., as the insurance claims discussed in this Complaint are not the product of covered insurance events.

17.     Rather, the purported automobile collisions and the resulting claims are the product of a coordinated and fraudulent effort perpetrated by the Individual Defendants to target drivers using the Uber platform in order stage and/or intentionally cause automobile collisions that they can claim to be accidents with the intent to obtain insurance benefits.

18.     As such, the Individual Defendants thereby violated the Liberty Mutual policy conditions, exclusions and/or provisions which have resulted in breaches of the contract of insurance. The Individual Defendants, therefore, are not entitled to insurance coverage from the Plaintiffs whatsoever.

19.     Because the underlying insurance claims are fraudulent, the Medical Provider Defendants are additionally not entitled to any benefits from Liberty Mutual.

20.     In addition to a Declaratory Judgment, Plaintiffs also seek damages against the Individual Defendants under New York law to remediate the harm they have caused.

## THE PARTIES

21.     Plaintiff Uber is a Delaware corporation with its principal place of business in California.

22.     Plaintiff Rasier-NY LLC is a limited liability company organized under Delaware law with its principal place of business in California. Rasier-NY LLC is a wholly owned subsidiary of Uber.

4

23.     Plaintiff Liberty Mutual Fire Insurance Company is a company organized under the laws of the State of Wisconsin with its principal place of business in Boston, Massachusetts.

24.     Defendant Georgette Powell, was and is a natural person who, upon information and belief, resides in the County of Kings, State of New York and is a citizen of New York State.

25.     Defendant Omar Zavier Allen, was and is a natural person who, upon information and belief, resides in the County of Kings, State of New York, and is a citizen of New York State.

26.     Defendant Kevar Taylor, was and is a natural person who, upon information and belief, resides in the County of Kings, State of New York, and is a citizen of New York State.

27.     Defendant Shamarie Livingston, was and is a natural person who, upon information and belief, resides in the County of Queens, State of New York, and is a citizen of New York State.

28.     Defendant Diyonta Balfour, was and is a natural person who, upon information and belief, resides in the County of Kings, State of New York, and is a citizen of New York State.

29.     Defendant Vivian Marshall, was and is a natural person who, upon information and belief, resides in the County of Kings, State of New York, and is a citizen of New York State.

30.     Defendant Anelka Ricardo Green, was and is a natural person who, upon information and belief, resides in the County of Kings, State of New York, and is a citizen of New York State.

31.     Defendant Konato Rashidi Campbell, was and is a natural person who, upon information and belief, resides in the County of Kings, State of New York, and is a citizen of New York State.

32.     Defendant Keeno H. Morrison, was and is a natural person who, upon information and belief, resides in the County of Queens, State of New York, and is a citizen of New York State.

5

33.     Defendant Dwayne Hyde, was and is a natural person who, upon information and belief, resides in the County of Westchester, State of New York, and is a citizen of New York State.

34.     Defendant Renato Campbell, was and is a natural person who, upon information and belief, resides in the County of Westchester, State of New York, and is a citizen of New York State.

35.     Defendant Shantia Wittingham, was and is a natural person who, upon information and belief, resides  in the County of Queens, State of New York, and is a citizen of New York State.

36.     Defendant Shedah James, was and is a natural person who, upon information and belief, resides in the County of Kings, State of New York, and is a citizen of New York State.

37.     Defendant, Odean Samuels, was and is a natural person who, upon information and belief, resides  in the County of Queens, State of New York, and is a citizen of New York State.

38.     Defendant Accucare Solutions Inc. is a New York corporation with its principal place of business in New York.

39.     Defendant Advanced Ortho DME Corp. is a New York corporation with its principal place of business in New York.

40.     Defendant Liberty MD, LLC is a Kansas limited liability corporation with its principal place of business in Kansas, which, upon information and belief, has as its sole member an individual who is citizen of the state of Kansas.

41.     Defendant Medical Supply of NY Direct Services Corp. is a New York corporation with its principal place of business in New York.

6

42.     Defendant Ortho Med Spa, Inc. is a New York corporation with its principal place of business in New York.

43.     Defendant Rockaway Blvd Pharmacy is a New York corporation with its principal place of business in New York.

44.     Defendant Simeon Isaacs, M.D. was and is a natural person who, upon information and belief, resides in and is a citizen of the state of Florida.

45.     Defendant Super Associates P.C. is a New York corporation with its principal place of business in New York.

## JURISDICTION AND VENUE

46.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1332(a)(1) because the total matter in controversy, exclusive of interests and costs, exceeds $75,000, and the controversy is between citizens of different states.

47.     Venue is proper pursuant to 28 U.S.C. § 1391 because one or more Defendants reside in the Eastern District of New York and a substantial amount of the activities forming the basis of this Complaint occurred within the Eastern District of New York.

## FACTUAL BACKGROUND

**I.      Using the Uber Platform to Commit Insurance Fraud**

**A.      Background on the Scheme**

48.     The Fraud Ring has and continues to fraudulently utilize the Uber platform to stage automobile accidents in order to allege fictitious liability claims against Uber and to submit fabricated insurance claims against Liberty Mutual.

49.     Each of the Individual Defendants colluded with one another to log in to the Uber application and request that a driver pick them for a ride at a predetermined location near the planned site of the collision.

7

50.    None of these incidents was random, accidental or sudden.

51.    Often the Uber rides are paid using a common method of payment between the Defendants.

52.    Once the Defendants are picked up by the driver, they request to be driven to a pre-ordained location which requires the unsuspecting driver to enter a controlled location where an accomplice of the Fraud Ring sits in wait, ready to intentionally strike the TNC vehicle.

53.    Following the staged losses, the Individual Defendants will then allege bodily injuries and falsely assert liability against the TNC driver and Uber.

54.    These claims, allegations and statements are all material misrepresentations intended to defraud Plaintiffs.

55.    Following the staged loss, the Defendants will treat excessively for the fabricated injuries and submit claims for No-Fault benefits for payment of the unnecessary medical treatments to Liberty Mutual.

56.    Plaintiffs are injured by false claims submitted pursuant to this scheme.

57.    Each of the staged losses described within this complaint follows a distinct *modus operandi* which illustrates the planned and organized nature of the attacks.

**B.    Examples of the Scheme in Operation Against Uber and Liberty Mutual**

58.    The following cases illustrate the pattern of corrupt activity directed against the Plaintiffs:

| Date of Staged Loss | Scheme Employed by the Fraud Ring |
|---|---|
| August 13, 2023 | - Late-night Uber request in Nassau County, N.Y.;<br>- Two passengers;<br>- Alleged hit-and-run side-swipe accident in close proximity to the pick-up location;<br>- Minor collision with alleged serious injuries. |

8

| | |
|---|---|
| August 20, 2023 | - Late-night Uber request in Nassau County, N.Y.;<br>- Two passengers;<br>- Alleged hit-and-run side-swipe accident in close proximity to the pick-up location;<br>- Minor collision. |
| August 23, 2023 | - Late-night Uber request in Nassau County, N.Y.;<br>- Two passengers;<br>- Alleged hit-and-run accident in close proximity to the pick-up location;<br>- Minor collision with alleged serious injuries. |
| October 10, 2023 | - Late-night Uber request in Nassau County, N.Y.;<br>- Two passengers;<br>- Alleged hit-and-run accident in close proximity to the pick-up location;<br>- Minor collision with alleged serious injuries. |
| October 26, 2023 | - Late-night Uber request in Nassau County, N.Y.;<br>- Two passengers;<br>- Alleged hit-and-run accident in close proximity to the pick-up location;<br>- Minor collision with alleged serious injuries. |
| July 29, 2024 | - Late-night Uber request;<br>- Two passengers;<br>- Alleged hit-and-run accident in close proximity to the pick-up location;<br>- Minor collision with alleged serious injuries. |
| September 22, 2024 | - Late-night Uber request;<br>- Two passengers;<br>- Alleged hit-and-run accident in close proximity to the pick-up location;<br>- Minor collision with alleged serious injuries. |
| March 1, 2025 | - Late-night Uber request in Nassau County, N.Y.;<br>- Two passengers;<br>- Alleged hit-and-run accident in close proximity to the pick-up location;<br>- Minor collision with alleged serious injuries. |

9

### 1. August 13, 2023 Staged Collision

59. On August 13, 2023 Defendants Kevar Taylor ("Taylor") and Shamarie Livingston ("Livingston") logged in to the Uber application and requested a ride near 182 Brown Avenue in Hempstead, Nassau County, N.Y.

60. A short time later, Scharlton Lynch, a TNC driver utilizing the Uber app, picked up Defendants Taylor and Livingston.

61. Soon after the ride began, an unknown vehicle intentionally grazed the side of the TNC vehicle (side-swipe collision). The unknown vehicle then fled from the scene.

62. Following the minor collision, Defendants Taylor and Livingston alleged bodily injuries including back and leg pain.

63. The TNC driver, Lynch, was uninjured.

64. On August 13, 2023 at approximately 10:30 p.m. EST, Defendant Taylor submitted a crash report through the Uber application which falsely stated "I was injured." The crash report also noted that Defendant Livingston was an "other passenger" in the vehicle and falsely stated that Defendant Livingston was "injured." The crash report stated that "[t]he car I was in got into a car accident" without disclosing that said accident was intentional and had been staged by Defendants Taylor and Livingston and other unnamed members of the Fraud Ring. These statements were knowingly false when made.

65. Defendants Taylor and Livingston then applied for No-Fault insurance coverage through Liberty Mutual. The matter was assigned claim number AB949-519083.

66. Defendant Livingston treated at several different medical facilities for his alleged injuries, many of which filed no-fault arbitrations on Livingston's behalf within the American Arbitration Association ("AAA"). In one such matter, *Cauldwell Pharmacy Inc a/a/o Shamarie*

*Livingston v. LM General Insurance Company*, AAA Case No. 17-24-1350-4581, **the arbitrator found that there was sufficient support for a finding that the August 13, 2023 incident was a staged collision**:

> I find that Respondent [LIBERTY MUTUAL] has set forth sufficient evidence of fraud. The commonalities between the two accidents as discussed above are not coincidental and establish sufficient evidence of a fraudulent scheme. I am satisfied that Respondent's unrebutted proof discussed herein establishes, by a fair preponderance of the credible evidence, a lack of coverage. The Mandatory Personal Injury Protection Endorsement does not apply to staged or intentional losses, regardless of the culpability of a particular claimant. An assignee stands in the shoes of an assignor and thus acquires no greater rights than those of its assignor. A lack of coverage defense premised on a fact or founded belief that the alleged injury does not arise out of an insured incident is not subject to the preclusion rule and may be raised at any time. For the reasons set forth herein and in the prior decision cited above, **I find that Respondent has established that the subject accident was a staged/intentional loss**, and Applicant has not submitted anything to refute the evidence. Accordingly, the claim is denied. This decision is in full disposition of all claims for no-fault benefits presently before this Arbitrator.

(Emphasis added; citations omitted.)

67.     Likewise, Defendant Taylor also treated at several different medical facilities for his alleged injuries.

68.     In the matter of *United Pharmacy NYC Inc. a/a/o Taylor Kevar v. Liberty Mutual Insurance Company*, AAA Case No. 17-24-1356-3413, the arbitrator found that there was sufficient support for a finding that the August 13, 2023 incident **was a staged collision**:

> I find that Respondent [LIBERTY MUTUAL] has set forth sufficient evidence of fraud. The commonalities between the two accidents as discussed above are not coincidental and establish **sufficient evidence of a fraudulent scheme**. I am satisfied that Respondent's unrebutted proof discussed herein establishes, by a fair preponderance of the credible evidence, a lack of coverage. The Mandatory Personal Injury Protection Endorsement does not apply to staged or intentional losses, regardless of the culpability of a particular claimant. An assignee stands in the shoes of an assignor and

11

thus acquires no greater rights than those of its assignor. A lack of coverage defense premised on a fact or founded belief that the alleged injury does not arise out of an insured incident is not subject to the preclusion rule and may be raised at any time. For the reasons set forth herein and in the prior decision cited above, **I find that Respondent has established that the subject accident was a staged/intentional loss, and Applicant has not submitted anything to refute the evidence**. Accordingly, the claim is denied. This decision is in full disposition of all claims for no-fault benefits presently before this Arbitrator.

(Emphasis added; citations omitted.)

69. A week after the August 13, 2023 incident described above, the Uber platform and a TNC vehicle were again targeted by a hit-and-run vehicle in Nassau County, N.Y. with a strikingly similar set of facts.

**2.    August 20, 2023 Staged Collision**

70. On August 20, 2023 an Uber account linked to Defendant Odean Samuels ("Samuels") requested to be picked up near 37 Maple Ave in Hempstead, Nassau County, N.Y. around 11:44 p.m.

71. A TNC driver, Yiming Leng, then picked up the individual believed to be Defendant Samuels as well as an additional unknown passenger.

72. Approximately one minute after the ride began, an unknown vehicle intentionally grazed the side of the TNC vehicle. The unknown vehicle then fled from the scene.

73. As with the other staged incident described herein, the passenger, Defendant Samuels, is directly connected with the Fraud Ring.

74. On August 20, 2023 at approximately 11:48 a.m. EST, Defendant Samuels submitted a crash report through the Uber application which falsely stated "I was injured." The crash report stated that the vehicle "was hit by another while it was moving" without disclosing that said

12

accident was intentional and had been staged by Defendant Samuels and other unnamed members of the Fraud Ring. These statements were knowingly false when made.

75.     Both Samuels and Defendant Taylor were passengers in a separate ride share collision which occurred on May 11, 2024. Moreover, Samuels shares an address (302 East 54th Street, Brooklyn, N.Y.) with Defendant Konato Campbell.

### 3.     August 23, 2023 Staged Collision

76.     Three days after the above staged loss, the Fraud Ring struck again.

77.     On August 23, 2023 Defendants Konato Campbell ("K. Campbell") and Anelka Green ("Green") logged in to the Uber application and requested a pick-up near 41 Harrison Avenue in Lynbrook, Nassau County, N.Y.

78.     At approximately 1:19 a.m., David Morton, a TNC driver utilizing the driver application, picked up the Defendants.

79.     Almost immediately after the ride began, the TNC vehicle was intentionally struck in the rear by an unknown vehicle which fled the scene.

80.     On August 23, 2023, at approximately 1:29 a.m. EST, Defendant Green submitted a crash report through the Uber application which falsely stated "I was injured." The crash report did not disclose that the referenced accident was intentional and had been staged by Defendants Green and K. Campbell and other unnamed members of the Fraud Ring. These statements were knowingly false when made.

81.     On August 23, 2023, Defendant Green filled out and signed a New York Motor Vehicle No-Fault Insurance Law Application for Motor Vehicle No-Fault Benefits. This application failed to disclose that the referenced motor vehicle accident was intentional and had been staged by Defendants Green and K. Campbell and other unnamed members of the Fraud Ring. These statements were knowingly false when made.

13

82.     On September 22, 2023, Defendant K. Campbell filled out and signed a New York Motor Vehicle No-Fault Insurance Law Application for Motor Vehicle No-Fault Benefits. This application failed to disclose that the referenced motor vehicle accident was intentional and had been staged by Defendants Green and K. Campbell and other unnamed members of the Fraud Ring.

83.     Following the minor collision, Defendants K. Campbell and Green alleged bodily injuries.

84.     The Defendants then applied for No-Fault insurance coverage through Liberty Mutual, which was handled under claim number, AB949-520525.

85.     Defendant Green is connected connection to the Fraud Ring.

86.     In November 2022, Green was arrested with five other men for drug charges in Panama City Beach, Florida. Three of the five other men arrested that day are Defendants in this matter and members of the Fraud Ring: Renato Campbell; Shamarie Livingston; and Kevar Taylor. A fourth man involved in that arrest was Shemar Wedderburn, Defendant Powell's son.

87.     Further, Defendant K. Campbell shares an address, 302 East 54th Street, Brooklyn, N.Y., with Defendant Samuels, who was involved in the August 20, 2023 staged collision described above.

88.     Defendant Green and Defendant K. Campbell are members and active participants of the Fraud Ring.

**4.     October 10, 2023 Staged Collision**

89.     On October 10, 2023, Defendants Georgette Powell ("Powell") and Omar Zavier Allen ("Allen") logged in to the Uber application and requested to be picked up near 127 Irving Street, Valley Stream, Nassau County, N.Y.

14

90.    At approximately 1:22 a.m., a TNC driver utilizing the Uber app, Gairy Gibbons ("Gibbons"), picked up the Defendants.

91.    Shortly after picking-up Defendants Powell and Allen, an unknown vehicle intentionally struck the side of the TNC vehicle. The unknown vehicle then fled from the scene.

92.    Following the minor collision, Defendant Powell alleged bodily injuries including pain in her head and on the left side of her body. Defendant Allen initially denied being injured at the scene.

93.    The TNC driver, Gibbons, was uninjured.

94.    Defendants Powell and Allen then applied for No-Fault insurance coverage through Liberty Mutual. The matter was assigned claim number, AB949-533243.

95.    On January 17, 2024, Defendant Powell appeared for an examination under oath ("EUO") at the request of Liberty Mutual and testified that she resides at 720 East 91st Street, Apartment 4, Brooklyn, N.Y. 11236 and that her son is Co-Defendant Kevar Taylor, who was involved in the August 13, 2023 hit-and-run incident as an Uber passenger.

96.    The October 10, 2023 incident was performed by the Fraud Ring as demonstrated by the familial relationship and shared residence between Defendant Powell and Defendant Taylor, as well as the common *modus operandi* with the other staged accidents.

97.    Defendant Powell treated at several different medical facilities for her alleged injuries, many of which filed No-Fault arbitrations on her behalf within AAA.

98.    In one such matter, *Kcaid Pharmacy Inc DBA Preferred Pharmacy a/a/o Georgette Powell v. Liberty Mutual Insurance Company*, AAA Case No. 17-24-1357-8048, the arbitrator found that there was sufficient support for a finding that the October 10, 2023 incident was a staged collision:

15

I find the expression "Once is an accident, twice is a coincidence, and three times a pattern" to be applicable in this situation. **I find the respondent has demonstrated that the incident that occurred on October 10, 2023 was a staged incident for which respondent is not responsible for no-fault benefits.** I find the respondent has demonstrated by sufficient evidence that alleged EIP P was involved in three incidents (in a 2 month span) in which alleged passengers in an Uber vehicle were struck by a motor vehicle that left the scene of the incident, one in which she was a passenger, one involving her son, and one involving a friend for which she arranged the Uber ride. I find the testimonies of alleged EIP P and alleged EIP OA in such conflict on so many significant points that the testimonies are incredible (The number of guests at the party, four or twenty-five, who arranged a party, the time of the motor vehicle accident, 11 PM or 1 AM, the circumstances of their friendship). Now with the matter with this forking thing every seven, all demonstrating that this incident was a staged accident.

(Emphasis added.)

99.     Defendant Powell was likewise involved in a more recent late-night "hit and run" side-swipe style collision on May 17, 2025 while riding as a backseat passenger. The May 17, 2025 incident appears to have been a failed attempt by the Fraud Ring to once again target Uber for a staged loss. Powell submitted injury claims to the Plaintiffs for the incident however the driver of the vehicle was not logged in to the Uber application at the time of the loss. Nevertheless, the May 17, 2025 incident is further proof that the Fraud Ring represents an ongoing conspiracy

### 5.     October 26, 2023 Staged Collision

100.     On October 26, 2023 members of the Fraud Ring caused another staged collision involving an Uber ride.

101.     On that day, Defendants Vivian Marshall ("Marshall") and Diyonta Balfour ("Balfour") logged in to the Uber application and requested to be picked up near 1106 Rottkamp Street, Valley Stream, Nassau County, N.Y.

102.     Defendants Marshall and Balfour members of the Fraud Ring.  They ordered the Uber ride using telephone number (347) 388-8014 which is linked with a street address of 720

16

East 91st Street, Brooklyn, N.Y. This is the same address used by Defendants Powell, Livingston, and Campbell.

103.   At approximately 1:45 a.m., a TNC driver utilizing the Uber app, Noel Garcia ("Garcia"), picked up two individuals, Defendants Marshall and Balfour for a ride.

104.   Two minutes after picking up Defendants Marshall and Balfour, an unknown vehicle intentionally struck the TNC vehicle. The unknown vehicle then fled from the scene.

105.   Following the minor collision, Defendants Marshall and Balfour each alleged multiple bodily injuries and applied for no-fault benefits through Liberty Mutual. The matter was assigned claim number, AB949-531995.

106.   The TNC driver, Garcia, was uninjured.

107.   On May 29, 2024 Defendant Marshall appeared for an EUO at the request of Liberty Mutual and testified that his girlfriend, Georgette, had requested the Uber ride on the date at issue, October 26, 2023. Though he could not recall Georgette's last name, the phone number which requested the Uber ride was (347) 388-8014, which is linked with Defendant Georgette Powell's address, 720 East 91st Street, Apartment 4, Brooklyn, N.Y. 11236.

108.   Defendant Balfour is likewise connected with the Fraud Ring as he previously submitted insurance claims in connection with an October 9, 2024 motor vehicle accident where he was travelling with Defendant Powell's son, Shamar Wedderburn.

109.   On the same evening, October 26, 2023, there was an additional incident involving a TNC loss with individuals associated with the Fraud Ring. Richard Anglin and Davion Myrie submitted insurance claims for alleged bodily injuries as passengers in a ride-share vehicle that evening. Investigation into those individuals revealed that Davion Myrie is associated with

17

Georgina Powell, Defendant Powell's twin sister who shares a common address, 720 East 91st Street, Apartment 4, Brooklyn, N.Y. 11236 with Defendants R. Campbell, Powell, and Taylor.

### 6.     July 29, 2024 Staged Collision

110.    The Fraud Ring staged an additional automobile intentional collision on July 29, 2024.

111.    As with the other incidents described in this complaint, the July 29, 2024 staged loss occurred in the late-night hours in the suburbs of New York City.

112.    Defendants Keeno H. Morrison ("Morrison") and Dwayne Hyde ("Hyde") logged in to the Uber application and requested to be picked up near 271 South 2nd Avenue in Mt Vernon N.Y. The Defendants requested the pick-up using an Uber account registered to another individual, Shauwana Wright, on a particular device, an iPhone 14,8 iOS 17.6.1 (V2) with the following device identifier: 0e72af43-68c5-411c-a30c-e68c1c5bdd23 ("the Shared iPhone 14"). The Shared iPhone 14 is connected with the Fraud Ring as it was logged in to the Uber application by an individual identified as "Shamar Trail" whose address is 720 East 91st Street, Apartment 4, Brooklyn, N.Y. 11236 – the same address used by Defendants Powell, Taylor, and Campbell. The Shared iPhone 14 was also used to book Uber rides by Defendant Livingston.

113.    At approximately 1:32 a.m., a TNC driver utilizing the Uber app, Johnnie Spencer ("Spencer"), picked up Defendants Morrison and Hyde.

114.    As with all of the other staged losses described herein, shortly after the pick-up, the vehicle was intentionally side-swiped by an unknown vehicle which fled the scene.

115.    The incident occurred just one minute after Defendants Morrison and Hyde began their ride at the intersection of Franklin Avenue and East 4th Street in Mt. Vernon N.Y.

116.    On July 29, 2024, at approximately 1:44 a.m. EST, an individual who on information and belief was Defendant Hyde submitted a crash report through the Uber application

which falsely stated "[o]ther passenger(s) were injured" and that Defendant Morrison "[w]as injured." The crash report did not disclose that the referenced accident was intentional and had been staged by Defendants Hyde and Morrison and other unnamed members of the Fraud Ring. These statements were knowingly false when made.

117. Following the minor collision, Defendants Morrison and Hyde each alleged multiple bodily injuries.

118. The TNC driver, Spencer, was uninjured.

119. The Defendants then applied for No-Fault insurance coverage through Liberty Mutual. The matter was assigned claim number, AB949-585179.

**7.     September 22, 2024 Staged Collision**

120. In addition to the August 13, 2023 incident described above, Defendant Livingston was again involved in a collision while travelling as a passenger in an Uber ride-share vehicle one year later on September 22, 2024.

121. On that day, September 22, 2024, Defendant Livingston and Defendant Renato Campbell ("R. Campbell") logged in to the Uber application and requested to be picked up near 45 Park Avenue, Mount Vernon, N.Y.

122. At approximately 12:07 a.m., a TNC driver utilizing the Uber app, Abul Chowdhury ("Chowdhury"), picked up the two Defendants.

123. Two minutes after picking up Defendants R. Campbell and Livingston, at approximately 12:09 a.m., an unknown vehicle intentionally side-swiped the TNC vehicle. The unknown vehicle then fled from the scene.

124. On September 22, 2024, at approximately 12:19 a.m. EST, an individual submitted a crash report through the Uber application which falsely stated "I was injured." The crash report also noted that Defendant Livingston and Defendant Campbell were both "[o]ther passenger(s)"

19

in the vehicle and falsely stated that both were "injured." The crash report did not disclose that the referenced accident was intentional and had been staged by Defendants Livingston and R. Campbell and other unnamed members of the Fraud Ring. These statements were knowingly false when made.

125. On September 27, 2024, Defendant R. Campbell filled out and signed a New York Motor Vehicle No-Fault Insurance Law Application for Motor Vehicle No-Fault Benefits. This application falsely stated that Defendant R. Campbell sustained an injury to the "[r]ight shoulder, lower back." This application also failed to disclose that the referenced motor vehicle accident was intentional and had been staged by Defendants Livingston and R. Campbell and other unnamed members of the Fraud Ring.

126. Following the minor collision, Defendant R. Campbell alleged bodily injuries, including pain in the hip. Defendant Livingston alleged pain in his ankle.

127. The TNC driver, Chowdhury, was uninjured and advised the responding police officer that he did not even feel an impact.

128. The Defendants then applied for No-Fault insurance coverage through Liberty Mutual. The matter was assigned claim number, AB949-596257.

129. In addition to Defendant Livingston's ties to the Fraud Ring discussed above, Defendant R. Campbell is likewise connected with several of the other Defendants.

130. On February 7, 2025 Defendant R. Campbell appeared for an EUO at the request of Liberty Mutual and testified that he resides at 720 East 91st Street, Apartment 4, Brooklyn, N.Y. 11236. This is the same address as Defendants Powell and Taylor.

20

131. Defendant R. Campbell also testified during the EUO this his aunt is an individual named Arlene White Scott ("Scott"). Defendant Powell testified during her EUO that Scott is her mother

### 8. March 1, 2025 Staged Collision

132. Most recently, on March 1, 2025 Defendants Shantia Whittingham ("Whittingham") and Shedah James ("James") were involved in a collision which, like all of the above incidents, involved two passengers alleging injuries in a late-night Uber accident which was intentionally side-swiped by an unknown vehicle. It is connected to the Fraud Ring.

133. On March 1, 2025 Defendants Whittingham and James logged in to the Uber application and requested to be picked up near 5 Green Acres Rd. West, Valley Stream, Nassau County, N.Y. The Defendants paid for the Uber ride using the same method of payment (identical bank account) (the "Shared Bank Account") as that used by Defendant Livingston.

134. At approximately 12:30 a.m., a TNC driver utilizing the Uber app, Ali Zareen ("Zareen"), picked up Defendants Whittingham and James.

135. Shortly after picking up Defendants Whittingham and James, at approximately 12:40 a.m., an unknown vehicle intentionally side-swiped the TNC vehicle. The unknown vehicle then fled from the scene.

136. On March 3, 2025, Defendant Whittingham contacted Uber customer support through the Uber application and stated that "I got into an accident Friday night and I haven't heard anything from anyone." This statement did not disclose that the referenced accident was intentional and was staged by Defendants Whittingham and James and other members of the Fraud Ring. This statement was knowingly false when made..

137. Following the minor collision each of the Defendants alleged bodily injuries while the TNC driver, Zareen, was uninjured.

138. The Defendants then applied for No-Fault insurance coverage through Liberty Mutual. The matter was assigned claim number, AB949-629926.

139. Defendant James was not only involved in the March 1, 2025 loss while riding as a passenger in an Uber, but he was also involved in two additional alleged accidents in ride-share vehicles in 2025. James was a passenger in a Lyft vehicle when it was struck by an unknown vehicle which fled the scene on January 29, 2025.

140. Defendant James was involved in a third "hit and run" loss while riding in an Uber on July 15, 2025. The July 15, 2025 incident is under investigation for being staged.

141. Defendant Whittingham was involved in a subsequent "hit and run" loss on July 4, 2025 while riding in a ride arranged through the Uber application.

## II.    Insurance Fraud Allegations

### A.    The Individual Defendants' Misconduct and Respective Bases for Liability

142. As detailed above, each of the Individual Defendants participated in an organized and ongoing fraudulent scheme to stage automobile collisions in order to falsely allege numerous bodily injuries.

143. Each of the Individual Defendants knowingly conspired to lure unsuspecting independent drivers to drive them to specific locations where another member of the Fraud Ring was stationed, waiting to intentionally strike the TNC vehicles in order to simulate a genuine motor vehicle accident.

144. The Individual Defendants participated in the scheme with knowledge that these intentional losses could potentially result in serious bodily injuries or death to themselves, the independent drivers, or any innocent bystanders who happened to be in the area when these intentional collisions occurred.

22

145.    The Individual Defendants likewise knowingly utilized the Uber application to facilitate the scheme with the intention of defrauding Liberty Mutual of insurance payments.

146.    The Individual Defendants made multiple material misrepresentations in the presentation of their claims.

147.    The Individual Defendants did so with the intent to deceive to recoup monies by deceptive and fraudulent means.

148.    The Individual Defendants all knew that the purported losses were not caused by genuine automobile accidents.

149.    The Individual Defendants therefore acted knowingly and willfully, and with fraudulent intent, and/or reckless indifference to the truth and as to the consequences of their actions when agreeing to participate in these staged losses.

**B.    Plaintiffs are Victims of the Scheme and Have Suffered Injury**

150.    Both Uber and Liberty Mutual are victims of this ongoing scheme based on substantial expenses paid to investigate, pay and defend these intentional incidents.

151.    Liberty Mutual and Uber have paid a total of no less than $312,979.00 in combined loss payments and expenses in connection with the seven staged losses described herein. Plaintiffs have thereby been damaged in such amount.

152.    But for the fraudulent actions of the Defendants, no money would have been paid or lost from these dates of loss.

153.    But for the intentional conduct of a falsely submitted claim, no money would have been paid out.

154.    Those payments were issued by as follows:

23

| Incident Date | Claim Number | Loss Payments Issued | Expense Payments Issued | Total Payments Issued |
|---|---|---|---|---|
| 8/13/23 | AB949-519083 | $60,201.00 | $24,174.00 | $84,375.00 |
| 8/23/23 | AB949-520525 | $68,147.00 | $41,635.00 | $109,782.00 |
| 10/10/23 | AB949-533243 | $13,152.00 | $33,710.00 | $46,861.00 |
| 10/26/23 | AB949-531995 | $0 | $17,079.00 | $17,079.00 |
| 7/29/24 | AB949-585179 | $23,357.00 | $17,369.00 | $40,726.00 |
| 9/22/24 | AB949-596257 | $0 | $7,896.00 | $7,896.00 |
| 3/1/25 | AB949-629926 | $2,175.00 | $5,092 | $7,267.00 |
| TOTALS | | $167,031.00 | $146,954.00 | $313,986.00 |

155.    In addition, each of the Plaintiffs have been forced to expend monetary resources to evaluate, thoroughly investigate, and defend the fraudulent claims submitted by the Individual Defendants. To that end, each of the Plaintiffs have been forced to incur significant legal costs in defending the fraudulent claims for incidents which were entirely fabricated by the Defendants.

156.    Moreover, each of the Plaintiffs have suffered further financial harm by the intentional and malicious interference with and disruption to their businesses.

157.    The injuries and damages caused by the Individual Defendants were the direct and foreseeable result of the fraud.

158.    The Individual Defendants' scheme remains ongoing given that new staged losses continue to occur.

24

### III.    Declaratory Judgment Allegations

#### A.    Basis for Declaratory Judgment

159.    The Individual Defendants named herein are alleged to have been injured in the caused, staged and/or intentional motor vehicle incidents described above. The subject incidents are not covered events as defined by the policy of insurance.

160.    Each of the Individual Defendants have made material misrepresentations of fact and false and/or fraudulent statements in the presentations of their respective claims. Furthermore, each of the Individual Defendants violated the Fraud provision of the applicable policy of insurance.

161.    The Individual Defendants, as a result of their involvement in the caused, staged and/or intentional events of: August 13, 2023 (Liberty Mutual claim number AB949-519083); August 20, 2023 (Liberty Mutual claim number AB949-520304); August 23, 2023 (Liberty Mutual claim number AB949-520525); October 10, 2023 (Liberty Mutual claim number AB949-533243); October 26, 2023 (Liberty Mutual claim number AB949-531995); July 29, 2024 (Liberty Mutual claim number AB949-585179); and March 1, 2025 (Liberty Mutual claim number AB949-629926), have and/or may in the future, submit claims to Liberty Mutual to recover no-fault benefits, uninsured/underinsured motorist benefits and bodily injury liability benefits pursuant to the Liberty Mutual policy of insurance issued to Rasier.

162.    Further, in seeking treatment and in furtherance of the conspiracy, the Individual Defendants assigned their rights for reimbursement under the Liberty Mutual policy to the Healthcare Providers Interested Parties by way of executing an Assignment of Benefits.

163.    The Medical Provider Defendants are providers of healthcare services that purported to deliver medical treatment and/or medical services and/or medical equipment to the Individual Defendants allegedly injured in the motor vehicle incidents described herein. The treatment

25

allegedly rendered to the Individual Defendants in these automobile incidents was done pursuant to the New York No-Fault Regulations.

164. After the rendition of healthcare services, the Medical Provider Defendants submitted their bills for the services that were allegedly rendered, along with the Assignment of Benefits, to Liberty Mutual for reimbursement pursuant to the New York No-Fault Regulation.

165. However, before the Defendants are entitled to receive reimbursement for the services that were allegedly rendered, the insurance carrier is entitled to obtain certain necessary information with regard to the services that were rendered and to verify the claim. In order to qualify for coverage and receive benefits, the Defendants must meet certain conditions precedent to coverage.

166. Defendants A Kevar Taylor, Shamarie Livingston, Anelka Ricardo Green, and Diyonta Balfour failed to meet a critical and material condition precedent to coverage as a result of their failures to appear for an Examination Under Oath ("EUO") as was reasonably requested by the Plaintiff.

167. Liberty Mutual seeks a declaration that, as a result of the Individual Defendants' violations of the Fraud provisions of the applicable policy of insurance, neither the Individual Defendants nor the Medical Provider Defendants have standing or a legal right to seek or receive any No-Fault reimbursements from the Plaintiffs for the claims arising from intentional incidents described herein. That Plaintiffs are under no obligation to pay or honor any outstanding claims for reimbursement that have been submitted by the Defendants for claims arising from intentional material misrepresentations of fact and/or fraudulent statements in presentation of the claim.

168. Liberty Mutual also seeks a declaration that the Medical Provider Defendants are not entitled to receive No-Fault reimbursements for services allegedly rendered and/or provided

26

to Defendants Kevar Taylor, Shamarie Livingston, Anelka Ricardo Green, and Diyonta Balfour failed to meet a critical condition precedent to coverage as set forth in the applicable policy of insurance as well as the No-Fault Regulation by refusing and failing to appear for duly scheduled EUOs.

**B.      Insurance Policy Provisions**

169.    At the time of each of the motor vehicle incidents described herein, Rasier had active automobile policy of insurance referenced as policy number AS2-665-067247452 (herein after, the "Rasier Policy") to insure the TNC vehicles.

170.    The Rasier Policy was underwritten by Liberty Mutual Fire Insurance Company. A copy of the automobile policy of insurance issued by Liberty Mutual, bearing policy number AS2-665-067247452, which was issued to Rasier for the TNC Vehicle, along with the relevant policy amendments and endorsements.

171.    The Rasier Policy provides for different types of coverage, such as liability coverage, bodily injury coverage and personal injury protection (No-Fault) coverage.

172.    The Interested Parties, acting as the assignees of individuals that they allegedly provided medical treatment to, have sought to obtain No-Fault insurance benefits under the applicable policy of insurance and endorsements. Below are the relevant policy provisions:

**SECTION II – COVERED AUTOS LIABILITY COVERAGE**

**A.      Coverage**

We will pay all sums an "insured" legally must pay as damages because of "bodily injury", or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance, or use of a covered "auto".

\*                \*                \*                \*

27

We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply.  We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Covered Autos Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

*            *            *            *

**NEW YORK "TNC" SUM Endorsement**

Insured. The unqualified term "insured" means:

    a.   You, as the named insured an, while residents of the same household, your spouse and the relatives of either you or your spouse;
    b.  Any other person while occupying:
    c.   (1) A motor vehicle insured for SUM under this policy;

*            *            *            *

E. Conditions
    1. Policy Provisions None of the Insuring Agreements, Exclusions or Conditions of the policy shall apply to this SUM coverage except: "Duties In The Event Of Accident, Claim, Suit Or Loss", "Fraud" and "Ending This Policy" if applicable.

**SECTION IV – BUSINESS AUTO CONDITIONS**

*            *            *            *

**Duties In The Event Of Accident, Claim Suit Or Loss**
We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

    a.        In the event of "accident", claim, "suit" or "loss", you must give us or our authorized representative prompt notice of the "accident" or "loss". Include:
        (1)  How, when and where the "accident" or "loss" occurred;
        (2)  The "insured's" name and address; and
        (3)  To the extent possible, the names and addresses of any injured persons and witnesses. We must be notified as soon as reasonably possible of how, when and where the accident or loss happened. Notice should also include the names and addresses of any injured persons.

28

    b.      Additionally, you and any other involved "insured" must:

        (1)  Assume no obligation, make no payment or incur no expense without our consent, except at the "insured's" own cost. Cooperate with us in the investigation, settlement or defense of any claim or suit.

        (2)  Immediately send us copies of any request, demand, order, notice summons or legal paper received concerning the claim or "suit".

        (3)  Cooperate with us in the investigation or settlement of the claim or defense against the "suit".

        (4)  Authorize us to obtain medical records or other pertinent information.

        (5)  Submit to examination, at our expense, by physicians of our choice as often as we reasonably require.

    c.      If there is "loss" to a covered "auto" or its equipment, you must also do the following:

        (1)  Promptly notify the police if the covered "auto" or any of its equipment is stolen.

        (2)  Take all reasonable steps to protect the covered "auto" from further damage. Also keep a record of your expenses for consideration in the settlement of the claim.

        (3)  Permit us to inspect the covered "auto" and records proving the "loss" before its repair or disposition.

        (4)  Agree to examinations under oath at our request and give us a signed statement of your answers.

**B.     General Conditions**

\*         \*         \*         \*

**2. Concealment, Misrepresentation Or Fraud**

Fraud. We do not provide coverage for any insured ("insured") who has made fraudulent statements or engaged in fraudulent conduct in connection with any loss or damage for which coverage is sought under this policy.

**3. Uninsured Motor Vehicle**. The term "uninsured motor vehicle" means a motor vehicle that through its ownership maintenance of use, results in bodily injury to an insured, and for which:

    a.      No bodily injury liability insurance policy or bond applies to such motor vehicle (including a vehicle that was stolen, operated without the owner's permission or unregistered) at the time of the accident; or

    b.      The owner and operator cannot be identified (including a hit-and-run motor vehicle), and which causes bodily injury to an insured by physical contact with the insured or with a motor vehicle occupied by the insured at the time of the accident, provided that:

        (1)  The insured or someone on the insured's behalf:

29

(a) Reported the accident within 24 hours or as soon as reasonably possible to a police, peace or judicial officer or to the Commissioner of Motor Vehicles; and

(b) Filed with the Company a statement under oath that the insured or the insured's legal representative has a cause or causes of action arising out of such accident for damages against a person or persons whose identity is unascertainable, and setting forth the facts in support thereof;

\*       \*       \*       \*

**PERSONAL INJURY PROTECTION COVERAGE -NEW YORK**

The Company agrees with the named insured, as follows:

**Section II**

**The New York Mandatory Personal Injury Protection Endorsement**

The Company will pay first-party benefits to reimburse for basic economic loss sustained by an eligible injured person on account of personal injuries caused by an accident arising out of the 'use or operation' of a motor vehicle…by a "transportation network company driver' during the policy period and within the United States of America, its territories or possessions, or Canada.

\*       \*       \*       \*

**B. Exclusions**

**1.      Expected Or Intended Injury**

This insurance does not provide coverage for an "insured" who intentionally causes, or directs another person to cause, "bodily injury" or property damage".

\*       \*       \*       \*

173. The Liberty Mutual insurance policy referenced above underlying the caused, staged and/or intentional claims provides that mandatory personal injury protection coverage does not apply to personal injury sustained by any person who intentionally causes his or her own personal injury.

30

174.   The Defendants are not entitled to No-Fault benefits under the mandatory personal injury protection endorsement of the Liberty Mutual insurance policy underlying the caused, staged and/or intentional claims because: (i) the injuries at issue, if any at all, were not caused by an accident; and (ii)the injuries at issue, if any at all, were intentionally caused by the Individual Defendants themselves.

175.   The Liberty Mutual insurance policy referenced above the underlying caused, staged and/or intentional claim also provides that there is no bodily injury liability coverage if the insured or any other person insured under the policy has made false statements with the intent to conceal or misrepresent any material fact or circumstance in connection with any claim under the policy.

176.   Liberty Mutual has no obligation to provide bodily injury liability coverage under the Liberty Mutual insurance policy or any amendment or endorsement underlying the caused, staged and/or intentional claim because: (i) the injuries at issue, if any at all, were not caused by an accident; and (ii)the injuries at issue, if any at all, were intentionally caused by the Individual Defendants.

177.   The Liberty Mutual insurance policy referenced above the underlying caused, staged and/or intentional claim also provides that there is no uninsured/underinsured motorist coverage if the insured or any other person insured under the policy has made false statements with the intent to conceal or misrepresent any material fact or circumstance in connection with any claim under the policy.

178.   The Liberty Mutual insurance policy referenced above the underlying caused, staged and/or intentional claim also provides that there is no uninsured/underinsured motorist coverage if the insured or any other person intentionally causes his or her own personal injury.

31

179.    Liberty Mutual has no obligation to provide uninsured/underinsured motorist coverage under the Liberty Mutual insurance policy or any amendment or endorsement underlying the caused, staged and/or intentional claim because: (i) the injuries at issue, if any at all, were not caused by an accident; and (ii) the injuries at issue, if any at all, were intentionally caused by the Individual Defendants themselves.

180.    "A deliberate collision caused in furtherance of an insurance fraud scheme is not a covered accident." *Metro Medical Diagnostics v. Eagle*, 293 A.D.2d 751, 752 (2d Dep't. 2002).

181.    The courts of the State of New York routinely hold that an automobile incident, which is the product of a staged or cause of event, is not a covered loss under the applicable policy of insurance. *See Allstate v. Massre*, 789 N.Y.S.2d. 206 (2d Dep't 2005), *State Farm v. Laguerre*, 305 A.D.2d 490 (2d Dep't. 2003), *Geico v. Shaulskaya*, 302 A.D.2d 522 (2d Dep't 2003).

182.    Further, an insurance carrier is not precluded from raising, at any time, that an automobile incident was not the product of a covered event, as "coverage" is a non-waiveable matter. *See Central General Hospital v. Chubb Group of Insurance Companies*, 90 N.Y.2d 195 (1997); *Zappone v. Home Insurance Company*, 55 N.Y.2d 131 (1982). *See generally State Farm v. Laguerre*, 305 A.D.2d at 491 (holding that an insurance carrier is not bound by the Insurance Law in issuing a disclaimer for a denial of coverage that is based on a lack of coverage for the incident in the first instance as it is not an exclusion under the policy of insurance).

183.    There is no coverage even if it is alleged that parties are "innocent" to the alleged perpetration of the intentional event. *See Allstate v. Massre*, 789 N.Y.S.2d. 206 (2d Dep't 2005), *State Farm v. Laguerre*, 305 A.D.2d 490 (2d Dep't 2003), *Geico v. Shaulskaya*, 302 A.D.2d 522 (2d Dep't 2003).

32

184.    A standard automobile liability policy does not provide coverage for injuries intentionally inflicted by the insured. *State Farm Insurance Company v. Langan*, 55 A.D.3d 281 (2d Dep't 2008).  An "accident" for insurance purposes is determined by looking through the "viewpoint of the insured." *Id*. An event is only an accident if through the "viewpoint of the insured, the event was "unexpected, unusual and unforeseen" and not brought about by the insured's own "misconduct, provocation, or assault." *Id.* (*citing Nallan v. Union Labor Life Ins. Co*., 42 N.Y.2d 884 (1977)).

### C.    Application of Staged and/or Intentional Loss Case Law

185.    "A deliberate collision caused in furtherance of an insurance fraud scheme is not a covered accident." *Metro Medical Diagnostics v. Eagle*, 293 A.D.2d 751, 752 (2d Dep't. 2002).

186.    The courts of the State of New York routinely hold that an automobile incident, which is the product of a staged or cause of event, is not a covered loss under the applicable policy of insurance. *See Allstate v. Massre*, 789 N.Y.S.2d. 206 (2d Dep't 2005), *State Farm v. Laguerre*, 305 A.D.2d 490 (2d Dep't 2003), *Geico v. Shaulskaya*, 302 A.D.2d 522 (2d Dep't 2003).

187.    Further, an insurance carrier is not precluded from raising, at any time, that an automobile incident was not the product of a covered event, as "coverage" is a non-waiveable matter. *See Central General Hospital v. Chubb Group of Insurance Companies*, 90 N.Y.2d 195 (1997); *Zappone v. Home Insurance Company*, 55 N.Y.2d 131 (1982).  *See generally State Farm v. Laguerre*, 305 A.D.2d at 491 (holding that an insurance carrier is not bound by the Insurance Law in issuing a disclaimer for a denial of coverage that is based on a lack of coverage for the incident in the first instance as it is not an exclusion under the policy of insurance).

188.    By virtue of the fact that the alleged automobile incidents described in this Complaint were part of a scheme perpetrated by the Individual Defendants to intentionally cause and

stage an automobile incident, Plaintiffs are not obligated to provide any coverage for said incidents.

189.     Plaintiffs are not obligated to honor or pay any claims for reimbursement submitted by the Medical Provider Defendants for No-Fault services that were allegedly provided to the Individual Defendants since there is no coverage in existence for said occurrences.

**D.      The Requirement to Appear for an Examination Under Oath**

190.     The No-Fault Regulation (the "Regulation") governs all claims for injuries made as a result of an automobile accident within the State of New York.

191.     The Regulation provides certain tools and mechanisms for an insurance carrier to investigate an accident and to confirm the treatment that was allegedly rendered as a result of any accident – this is done through conditions precedent to coverage or verification requests.

192.     The conditions precedent to coverage states the following at 11 NYCRR 65-1.1:

> MANDATORY PERSONAL INJURY PROTECTION ENDORSEMENT, Section I, *Conditions*
>
> No action shall lie against the Company unless, as a condition precedent thereto, there shall have been full compliance with the terms of this coverage.
>
> \*                    \*                    \*
>
> Proof of Claim; Medical, Work Loss, and Other Necessary Expenses. In the case of a claim for health service expenses, **the eligible injured person or that person's assignee or representative shall** submit written proof of claim to the Company, including full particulars of the nature and extent of the injuries and treatment received and contemplated, as soon as reasonably practicable but, in no event later than 45 days after the date services are rendered. The eligible injured person or that person's representative shall submit written proof of claim for work loss benefits and for other necessary expenses to the Company as soon as reasonably practicable but, in no event, later than 90 days after the work loss is incurred or the other necessary services are rendered. The foregoing time limitations for the submission of proof of claim shall apply unless the eligible injured person or that person's representative submits written proof providing clear and reasonable justification for the failure to

34

comply with such time limitation. **Upon request by the Company, the eligible injured person or that person's assignee or representative shall**:

(a) execute a written proof of claim under oath;
(b) as may reasonably be required **submit to examinations under oath by any person named by the Company** and subscribe the same;
(c) provide authorization that will enable the Company to obtain medical records; and
(d) **provide any other pertinent information that may assist the Company** in determining the amount due and payable. (emphasis added)

193.    11 NYCRR 65-3.5(c) states that the "insurer is entitled to receive all items necessary to verify the claim directly from the parties from whom such verification was requested." Section 11 NYCRR 65-3.8(f) dictates that nothing in the Regulation shall prevent an insurer from requesting full and complete proof of claim prior to the issuance of any payments or denials.

194.    The provision of the Conditions section that states "No action shall lie against the Company unless, as a condition precedent thereto, there shall have been full compliance with the terms of this coverage" has been interpreted by the Courts as establishing a condition precedent to coverage.

195.    11 NYCRR § 65-3.5(c) states that the "insurer is entitled to receive all items necessary to verify the claim directly from the parties from whom such verification was requested." Section 11 NYCRR 65-3.8(f) dictates that nothing in the Regulation shall prevent an insurer from requesting full and complete proof of claim prior to the issuance of any payments or denials.

196.    The Appellate Term of the Supreme Court held in *W&Z Acupuncture, P.C. v. Amex Assurance Company*, 901 N.Y.S.2d 903 (App. Term 2d Dep't 2009), that the appearance of a medical provider at an examination under oath is a condition precedent to coverage. Specifically,

35

the Court held that the "appearance of the eligible injured person's assignee at an EUO is a condition precedent to the insurer's liability on the policy." *Id*.

197.    Pursuant to the applicable policy provisions, Defendants Taylor, Livingston, Green, and Balfour, was obligated to appear and complete an EUO as a condition precedent to coverage. *Dover Acupuncture, P.C. v 31 State Farm Mut. Auto. Ins. Co.,* 28 Misc. 3d 140(A), 958 N.Y.S.2d 60 (App. Term 1st Dep't 2010).

198.    11 NYCRR § 65-3.5(c) states that the "insurer is entitled to receive all items necessary to verify the claim directly from the parties from whom such verification was requested." Section 11 NYCRR 65-3.8(f) dictates that nothing in the Regulation shall prevent an insurer from requesting full and complete proof of claim prior to the issuance of any payments or denials.

199.    It has been uniformly held that the No-Fault Regulation's requirement for an eligible injured person or their assignee to appear for an Examination Under Oath is a condition precedent to an insurer's liability under the policy. *See Interboro Ins. Co. v. Clennon*, 2014 NY Slip Op 00092 (App. Div. 2d Dep't 2014) (citing *Unitrin Advantage Ins. Co. v. Bayshore Physical Therapy, PLLC, et al.,* 918 N.Y.S.2d 473, 82 A.D.3d 559, 560 (1st Dep't 2011)). *See, e.g., Dover Acupuncture, P.C. v. State Farm Mut. Auto. Ins. Co*., 28 Misc. 3d 140(A), 958 N.Y.S.2d 60 (App. Term 1st Dep't 2010) (a provider's non-appearance warranted dismissal based upon "plaintiff's failure to comply with a condition precedent to coverage"); *Five Boro Psychological Servs., P.C. v Progressive Northeastern Ins. Co*., 27 Misc. 3d 141(A), 911 N.Y.S.2d 392 (App. Term 2d Dep't 2010) ("the appearance of plaintiff's assignor at an EUO was a condition precedent to defendant insurer's liability on the policy"); *Stephen Fogel Psychological, P.C. v. Progressive Cas. Ins. Co.,* 35 A.D.3d 720, 722, 827 N.Y.S.2d 217, 219 (App. Div. 2d Dep't 2006) ("The appearance of the insured for IMEs at any time is a condition precedent to the insurer's liability on the policy").

36

200.   Once an eligible injured person, or their assignee, fails to comply with a condition precedent as set forth in the policy endorsements at 11 NYCRR § 65-1.1, such as a medical examination or examination under oath, the carrier's requirement to timely deny the bill is vitiated and the policy is void, ab initio. *Unitrin Advantage Ins. Co. v. Bayshore Physical Therapy, PLLC,* 82 A.D.3d 559 (1st Dep't, 2011) (citing *Central Gen. Hosp. v Chubb Group of Ins. Cos.,* 90 N.Y.2d 195 (1997).

201.   Pursuant to the No-Fault Regulation, Defendants Taylor, Livingston, Green, and Balfour had an absolute condition precedent to coverage to appear for their scheduled EUOs.

202.   According to the New York Department of Financial Services and 11 NYCRR 65-3.5(e) the No-Fault Regulation does not require an insurance carrier to provide a reasonable basis for requesting an EUO.

203.   Nevertheless, Liberty Mutual had, and continues to have, a reasonable basis to request the EUO of Defendants Taylor, Livingston, Green, and Balfour and, with their full cooperation in answering questions in order to determine the facts and circumstances surrounding the subject loss of August 23, 2023, and whether or not they were eligible to collect No-Fault benefits pursuant to Insurance Law 5102(a)(1).

204.   Upon receipt of notification of the incident of August 23, 2023, Liberty Mutual began an investigation into the legitimacy of the incident to verify, among other things, the facts surrounding the loss; as well as the injuries sustained, and the medical treatment allegedly rendered.

205.   Liberty Mutual's reasons for requesting the EUO of the Individual Defendant, includes, but is not limited to, the following:

     a.   Based on the information delineated above;

b.      To verify coverage;

c.      To investigate the causal relationship; and

d.      To determine the medical necessity of treatment.

**E.      Coverage Liability for Failure to Appear at an EUO**

206.    Defendants Taylor, Livingston, Green, and Balfour each failed to cooperate with Co-Plaintiff Liberty Mutual's requests to appear for EUO and are therefore ineligible for coverage under The Policy:

-       Defendant Taylor failed to appear for EUOs scheduled to occur on December 7, 2023 and January 25, 2024.

-       Defendant Livingston failed to appear for EUOs scheduled to occur on December 12, 2023 and January 25, 2024.

-       Defendant Green failed to appear for EUOs scheduled to occur on December 14, 2023, March 27, 2024, and May 31, 2024.

-       Defendant Balfour failed to appear for EUOs scheduled to occur on January 13, 2024, March 22, 2024, and May 6, 2024.

207.    Based upon Defendants' breach of a condition precedent to coverage by failing to appear for an EUO, Liberty Mutual is under no obligation to honor or pay any First-Party benefits for any claims for said Defendants arising out of the alleged motor vehicle incidents of August 13, 2023.

208.    The refusal and failure of Defendants Taylor, Livingston, Green, and Balfour to appear for an EUO is a breach of a condition precedent to coverage and the failure to meet this condition precedent to coverage leaves these Defendants ineligible to receive No-Fault reimbursements.

38

209.    The No-Fault Regulation contains explicit language in 11 NYCRR 65-1.1 that there shall be no liability on the part of the No-Fault insurer if there has not been full compliance with the conditions precedent to coverage.  Specifically, 11 NYCRR 65-1.1 states:

> No action shall lie against the Company, unless as a condition precedent thereto, there shall have been full compliance with the terms of this coverage.

210.    One such condition contained within the Regulation is the appearance of the Individual Defendants for an EUO.

> Upon request by the Company, the eligible injured person or that person's assignee or representative shall:
>
> (a)  execute a written proof of claim under oath;
> (b) as may reasonably be required submit to examinations under oath by any person named by the Company and subscribe the same;
> (c)  provide authorization that will enable the Company to obtain medical records; and
> (d) provide any other pertinent information that may assist the Company in determining the amount due and payable.

211.    The failure of Defendants Taylor, Livingston, Green, and Balfour, to appear at an EUO renders these Defendants ineligible to receive No-Fault reimbursements from Liberty Mutual for any treatment that was rendered by the Healthcare Provider Interested Parties for the claims in which an EUO of the Defendants Taylor, Livingston, Green, and Balfour was sought and they failed to appear.

212.    The First Department, held that where there is a failure to comply with a condition precedent to coverage, an insurer has "the right to deny all claims retroactively to the date of loss, regardless of whether the denials were timely issued." *Unitrin Advantage Ins. Co. v. Bayshore Physical Therapy, PLLC*, 918 N.Y.S. 2d 473 (1st Dep't 2011), leave to appeal denied, 17 N.Y.2d 705 (2011).

213. Based upon Defendants Taylor, Livingston, Green, and Balfour breach of a condition precedent to coverage by failing to appear for an EUO, Liberty Mutual is under no obligation to honor or pay for the claims in which an EUO was sought and these Defendants failed to appear.

## CAUSES OF ACTION

### COUNT I
### Common Law Fraud
**(Against Defendants Georgette Powell, Omar Zavier Allen, Kevar Taylor, Shamarie Livingston, Anelka Ricardo Green, Konato Rashidi Campbell, Diyonta Balfour, Vivian Marshall, Renato Campbell, Keeno H. Morrison, Shantia Wittingham, Dwayne Hyde, Shedah James, and Odean Samuels)**

214. Plaintiffs repeat, reiterate, and incorporate each allegation contained in all sections and subparts as well as all Counts within the pleading as though set forth at length herein.

215. These Defendants participated in a well-organized intentional scheme to intentionally cause a series of motor vehicle collisions in order to falsely assert claims for bodily injuries.

216. These Defendants knowingly concealed the intentionality of the loss and attempted to present a claim as sudden and accidental for the expressed purpose of seeking monetary damages.

217. The subject dates of loss were neither sudden nor accidental, and instead were intended for the sole purpose of committing insurance fraud.

218. Defendants made the false representations described above at the dates and times stated therein.  Defendants knew such representations were false when made and made such representations with the intent to deceive. In reliance on Defendants' false representations, Plaintiffs made the expenditures described above and were forced to expend monetary resources to evaluate and thoroughly investigate the fraudulent claims submitted for damages.

219. These Defendants have therefore committed the tort of fraud, and the Plaintiffs have suffered damages as a direct and proximate result of the Defendants' actions.

40

## COUNT II
### Unjust Enrichment
**(Against Defendants Georgette Powell, Omar Zavier Allen, Kevar Taylor, Shamarie Livingston, Anelka Ricardo Green, Konato Rashidi Campbell, Diyonta Balfour, Vivian Marshall, Renato Campbell, Keeno H. Morrison, Shantia Wittingham, Dwayne Hyde, Shedah James, and Odean Samuels)**

220. Plaintiffs repeat, reiterate, and incorporate each allegation contained in all sections and subparts as well as all Counts within the pleading as though set forth at length herein.

221. Each of these Defendants have been and will continue to be unjustly enriched by benefits received pursuant to the fraudulent scheme, through payment of insurance benefits including payment of medical bills on their behalf.

222. Principles of equity and good conscience require restitution of any such benefits received by these Defendants.

223. Plaintiffs demand judgment against these Defendants, jointly and severally, for restitution of all such benefits received.

## COUNT III
### Civil Conspiracy
**(Against Defendants Georgette Powell, Omar Zavier Allen, Kevar Taylor, Shamarie Livingston, Anelka Ricardo Green, Konato Rashidi Campbell, Diyonta Balfour, Vivian Marshall, Renato Campbell, Keeno H. Morrison, Shantia Wittingham, Dwayne Hyde, Shedah James, and Odean Samuels)**

224. Plaintiff repeats and reiterates each allegation contained in the introduction section as well as all Counts within the pleading as though set forth at length herein.

225. These Defendants have committed the tort of conspiracy to commit fraud based on their coordinated plan to intentionally cause a motor vehicle accident with the Plaintiff's vehicle. *Norex Petroleum Ltd. v. Blavatnik*, 48 Misc. 3d 1226(A) (Sup. Ct. New York Co. 2015) (judgment entered sub nom. *Norex Petroleum Ltd. v. Blavatnik, et al.* (Sup. Ct. New York Co. 2015), and aff'd, appeal dismissed, 151 A.D.3d 647 (1st Dep't 2017).

41

226. In particular, these Defendants participated in an well-organized intentional scheme meant to cause a motor vehicle accident resulting in claims for property damages and bodily injuries. Pursuant to such scheme, Defendants reached an agreement among themselves, carried out one or more overt acts in furtherance of the agreement, and intentionally participated in the conspiracy in furtherance of a plan or purpose.

227. The subject dates of loss were neither sudden nor accidental, and were intended for the purpose of committing insurance fraud.

228. Plaintiffs were damaged as a result of the conspiracy, including by making payments and expending monetary resources to evaluate and thoroughly investigate the fraudulent claims.

229. These Defendants have therefore committed the tort of conspiracy to commit fraud and the plaintiff has suffered damages as a direct and proximate result of the defendants' actions.

**COUNT IV**
**Declaratory Judgment Under 28 U.S.C. § 2201**
**(By Liberty Mutual Against Defendants Renato Campbell, Shamarie Livingston, Keeno Morrison, Dwyane Hyde, Odean Samuels, Accucare Solutions Inc., Advanced Ortho Dme Corp., Liberty MD, LLC, Medical Supply of NY Direct Services Corp., Ortho Med Spa, Inc., Rockaway Blvd Pharmacy, Simeon Isaacs, M.D., and Super Associates P.C.)**

230. Plaintiff Liberty Mutual repeats, reiterates, and incorporates each allegation contained in all sections and subparts as well as all Counts within the pleading as though set forth at length herein.

231. As described herein, none of the insurance claims presented by the Defendants were the product of covered events under the automobile policies issued by Liberty Mutual to its insured Rasier, inasmuch as the automobile incidents were the result of caused, staged and/or intentional

42

events designed and perpetrated by the Defendants in order to receive insurance benefits that the Defendants were not entitled to receive.

232. By virtue of the forgoing, Liberty Mutual seeks a Declaratory Judgment pursuant to 28 U.S.C. § 2201 that the alleged motor vehicle incidents of: August 20, 2023 (Liberty Mutual claim number AB949-520304); July 29, 2024 (Liberty Mutual claim number AB949-585179); and September 22, 2024 (Liberty Mutual claim number AB949-596257) were not the product of covered events as defined by the applicable policy of insurance issued by Liberty Mutual as they were the product of caused and/or staged and/or intentional events. As a result, Liberty Mutual has no obligation to issue payments or provide coverage for any harm, injury, liability, or treatment or any claims submitted by any of the Defendants.

**COUNT V**
**Declaratory Judgment Under 28 U.S.C. § 2201**
**(By Liberty Mutual Against Defendant Shamarie Livingston)**

233. Liberty Mutual repeats, reiterates, and incorporates each allegation contained in all sections and subparts as well as all Counts within the pleading as though set forth at length herein

234. By virtue of the Defendant Shamarie Livingston's failure to appear for an EUO and the resulting breaches of the condition precedent to coverage, Liberty Mutual is not obligated to provide any coverage to Defendant Shamarie Livingston or any medical provider for any claims submitted by, or on behalf of, Shamarie Livingston.

235. Liberty Mutual seeks a declaratory judgment pursuant to 28 U.S.C. § 2201 that Liberty Mutual is under no obligation to pay, honor or reimburse any medical provider for any claims that were submitted by, or on behalf of, Defendant Shamarie Livingston.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiffs Uber, Raiser, and Liberty Mutual respectfully pray that judgment enter in their favor as follows:

43

a.    On its First Cause of Action, award Plaintiffs restitution; actual damages consequential damages; punitive damages; interest; costs; and reasonable attorneys' fees;

b.    On its Second Cause of Action, award Plaintiffs restitution; actual damages consequential damages; punitive damages; interest; costs; and reasonable attorneys' fees;

c.    On its Third Cause of Action, award Plaintiffs restitution; actual damages consequential damages; punitive damages; interest; costs; and reasonable attorneys' fees;

e.    On its Fourth Cause of Action, a declaration that the reported motor vehicle incidents of: August 20, 2023 (Liberty Mutual claim number AB949-520304); July 29, 2024 (Liberty Mutual claim number AB949-585179); and September 22, 2024 (Liberty Mutual claim number AB949-596257) were not the product of a covered events as they were the result of intentional and/or staged occurrences therefore Plaintiffs have no obligation to issue payments or provide coverage for any harm, injury, liability, or treatment on any claims submitted by any of the Defendants which includes no obligation to pay any sums, monies, damages, awards and/or benefits to the Healthcare Provider Interested Parties named herein;

f.    On its Fifth Cause of Action, a declaration that no medical providers have standing to seek or receive no-fault reimbursements for any bill submitted by or on behalf of Defendant Shamarie Livingston as this Defendant breached a policy condition by failing to appear for a scheduled EUO;

g.    For costs and disbursements of this action; and

h.    For such other and further relief as this Court deems just, proper and equitable.

## DEMAND FOR JURY TRIAL

Plaintiffs Uber, Raiser, and Liberty Mutual hereby demand a trial by jury on all issues herein.

44

Dated: New York, New York.
 April 14, 2026

Respectfully submitted,

PERKINS COIE LLP

By: */s/ David W. T. Daniels*
 David W. T. Daniels
 700 Thirteenth Street NW
 Washington, DC 20005-3960
 Tel: +1.202.654.6200
 Fax: +1.202.654.6211
 DDaniels@perkinscoie.com

 Jacob J. Taber
 William P. Wilder
 1155 Avenue of the Americas, 22nd Floor
 New York, NY 10036-2711
 Tel: +1.212.262.6900
 Fax: +1.212.977.1649
 JTaber@perkinscoie.com
 WWilder@perkinscoie.com

 Counsel for Plaintiffs Uber Technologies, Inc. and Rasier-NY, LLC

MARSHALL DENNEHY, P.C.

By:
 Lucinda E. C. James
 Wall Street Plaza
 88 Pine Street – 29th Floor
 New York, NY 10005
 Tel: +1.212.376-6400
 Fax: +1.212.376-6490
 LEJames@MDWCG.com

 Counsel for Plaintiff Liberty Mutual Fire Insurance Company

45